Calvin W. JEWELL and Diane E. Jewell, husband and wife, Appellants (Plaintiffs),

v.

CHRYSLER CORPORATION, a Delaware corporation, Appellee (Defendant).

No. 98–94.

Supreme Court of Wyoming.

Dec. 28, 1999.

Representing Appellants: Joseph E. Darrah of Darrah & Darrah, P.C., Powell, WY.

Representing Appellee: Chris Edwards of Simpson, Kepler & Edwards, L.C., Cody, WY.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

In this "Lemon Law" case, the disgruntled car buyers appeal the district court's finding that they did not present sufficient evidence to invoke the protections of Wyoming's Lemon Law, Wyo. Stat. Ann. § 40–17–101 (Lexis 1999). After a review of the record, we conclude that the district court's findings are not clearly erroneous; and we, therefore, affirm.

## ISSUES

The appellant car buyers, Calvin W. Jewell and Diane E. Jewell (Jewells), present three issues for our review:

A. As a matter of law, does an express concession of a dealer/agent of the manu-

facturer under the W.S. § 40–17–101 (Lemon Law) the vehicle is in fact a 'lemon,' per se, trigger the remedies provided in W.S. § 40–17–101(c) to the consumer?

B. The district court erred in not considering and/or not finding from the uncontroverted evidence that appellants' vehicle had in fact met the numerical requirement of the presumption of the same nonconformity being subject to repair more than three times under the circumstances of the case pursuant to W.S. § 40–17–101(d).

C. The lower court erred in finding, and the uncontroverted evidence does not sustain, the lower court's express finding the appellants were offered and refused the relief the Lemon Law provides.

The appellee, Chrysler Corporation, restates:

I. Does a statement by the distributor of the vehicle that the vehicle is a lemon automatically trigger the remedies provided in Wyoming Statutes section 40–17–101?

II. Did the district court commit reversible error when it determined that appellants' vehicle had not met the numerical requirements for repair as required by Wyoming Statutes section 40–17–101?

III. Did the district court commit reversible error when it determined that the appellants were offered and had refused the relief the Lemon Law provides?

### FACTS

On November 27, 1995, the Jewells purchased a 1995 Chrysler Cirrus automobile from Justin Ford & Chrysler in Powell, an authorized dealer of appellee Chrysler Corporation. At the time of purchase, the vehicle's odometer read 4,205 miles. Although the vehicle had been previously owned, it remained subject to a 3–year/36,000 mile manufacturer's warranty.

The Jewells took immediate possession of the vehicle and drove it from Powell to their home in Lovell. When they arrived in Lovell, the Jewells discovered that the interior

lights of the Cirrus were not working. They contacted Justin Ford & Chrysler to report the problem and were told to bring the vehicle in and it would be fixed. The Jewells brought the vehicle in for service the next day, having driven the car a total of 69 miles.

During the time the car was in the shop (November 28—January 8), Justin Ford & Chrysler had some difficulty finding the parts needed to fix the Cirrus' problems. Three repair orders were written, and those repair orders list a number of different repairs. The first two repair orders are dated November 28, 1995, and the third is dated December 1, 1995.

On December 30, 1995, while the Cirrus was still in for service, Mr. Jewell met with Justin Ford & Chrysler's sales manager and the salesman who sold the vehicle. Jewell expressed his dissatisfaction with the Cirrus. Three options were discussed: (1) the Jewells could keep the Cirrus; (2) the Jewells could trade the Cirrus for a like Cirrus; or (3) the Jewells could trade the Cirrus for a different type of car. Mr. Jewell suggested a fourth option: leave the Cirrus there and take his money back. The sales people told Jewell they needed approval from the general manager before committing to anything. At trial, Mr. Jewell admitted that, at that point in time, he decided he did not want the car, whether it was working or not.

On January 8, 1996, Mr. Jewell met with Justin Todd, the general manager of Justin Ford & Chrysler. Mr. Jewell asserted that he believed the vehicle was a lemon. Todd responded that he did not disagree. However, Todd also told Mr. Jewell he would have to take possession of the vehicle because it was repaired. Mr. Jewell refused and walked out without driving the vehicle to determine if it was in working order. At the time of trial, December 30, 1997, the Cirrus was still on the lot at Justin Ford & Chrysler.

On January 30, 1996, the Jewells wrote to Chrysler providing notice they intended to pursue a Lemon Law action.[1] After unsuc-

---

1. Wyoming's Lemon Law, Wyo. Stat. Ann. § 40–17–101 provides:

(h) In no .event shall the presumption herein provided in subsection (d) of this section apply against a manufacturer unless the manufactur-

cessful negotiations, Jewells filed this suit on June 10, 1996, relying solely on Wyoming's Lemon Law. After a bench trial, the district court entered judgment in Chrysler's favor.

Specifically, the district court ruled that the Jewells had not satisfied either of the presumptions contained in the Lemon Law. First, the district court found that the vehicle was out of service due to repair for a cumulative total of 26 business days, four short of the presumptive number. Although the vehicle was in the shop from November 28, 1995, to January 8, 1996 (the day the Jewells refused to accept return of the vehicle), after subtracting holidays, weekends when Justin Ford & Chrysler's service department was not open, and two days in which the Jewells' daughter used the vehicle, the district court concluded that the vehicle had been out of service due to repair for 26 business days. Pertinent to this appeal, the district court also found "there is absolutely no evidence that the subject vehicle was subject to repair more than three times." The Jewells timely appeal.

### STANDARD OF REVIEW

 The factual findings of a judge are subject to a broader scope of review than a jury verdict, and the appellate court may examine all of the properly admissible evidence in the record. *Springer v. Blue Cross and Blue Shield of Wyoming*, 944 P.2d 1173, 1175–76 (Wyo.1997); *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo. 1993). The district court's findings are presumptively correct and will not be set aside unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* We review a district court's conclusions of law de novo. *Id.*

### DISCUSSION

 Although the Cirrus was previously owned, it was transferred to the Jewells while under an express warranty. The Jew-

ells therefore qualify as "consumers" who may seek the protections of Wyoming's Lemon Law. *Britton v. Bill Anselmi Pontiac-Buick–GMC, Inc.*, 786 P.2d 855, 862–65 (Wyo.1990). That law, Wyo. Stat. Ann. § 40–17–101 (Lexis 1999), provides in relevant part:

§ 40–17–101. Definitions; express warranties; duty to make warranty repairs.

(c) If the manufacturer, its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use and fair market value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall:

(i) Replace the motor vehicle with a new or comparable motor vehicle of the same type and similarly equipped; or

(ii) Accept return of the motor vehicle and refund to the consumer and any lienholder as their interest may appear the full purchase price including all collateral charges less a reasonable allowance for consumer's use.

(d) It is presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to express warranty if within one (1) year following the original delivery of the motor vehicle to the consumer, whichever is later:

(i) The same nonconformity has been subject to repair more than three (3) times by the manufacturer, its agents or its authorized dealers and the same nonconformity continues to exist; or

(ii) The vehicle is out of service due to repair for a cumulative total of thirty (30) business days.

*Repair Attempts*

At trial, the Jewells attempted to establish both presumptions contained in § 40–17–101(d). First, they tried to establish that the vehicle had been out of service due to repair for a cumulative total of thirty business days. In the alternative, they tried to establish the same nonconformity of the vehicle was sub-

---

er has received prior direct written notification from or on behalf of the consumer and has had

a reasonable opportunity to cure the alleged defect.

ject to repair more than three times. On appeal, the Jewells do not challenge the district court's finding that the car was out of service due to repair for 26 business days. Instead, they argue the district court erred in finding "there is absolutely no evidence that the subject vehicle was subject to repair more than three times."

■ Relying on three repair orders admitted as exhibits, the Jewells argue that the same nonconformity was subject to repair on more than three occasions. However, the repair orders do not support this contention. At best, the repair orders establish that an item called the body control module was repaired on three occasions. The Lemon Law requires that the same nonconformity be subject to repair "*more* than three times" to establish the presumption found in Wyo. Stat. Ann. § 40–17–101(d)(i) (emphasis supplied). The Jewells failed to establish any repairs other than those detailed in the repair orders. Despite this, the Jewells argue that all the repairs were of the electrical system, and each item listed on each repair order should count as a repair attempt. Like the district court, we decline to accept such a strained interpretation of the repair orders or the phrase "subject to repair." Wyo. Stat. Ann. § 40–17–101(d)(i). Thus, the district court's finding that there is "no evidence that the subject vehicle was subject to repair more than three times" is supported by the record and is not clearly erroneous.[2]

■ We also note in passing that to rely on the presumption specified in Wyo. Stat. Ann. § 40–17–101(d)(i), the Jewells were required to establish that the same nonconformity was subject to repair more than three times *and* the "same nonconformity continues to exist." Although the district court did not make specific findings on this issue, our review of the record satisfies us that the Jewells did not establish any nonconformity continued to exist. In fact, the evidence points to the contrary. On January 8, the general manager of Justin Ford & Chrysler told Mr. Jewell he would have to take possession of the Cirrus because it was

repaired. Nothing in the record indicates that Mr. Jewell investigated whether the vehicle was in working order at that time. Indeed, Mr. Jewell admitted that he walked out without ever driving the vehicle to determine if it was repaired. Further, the general manager testified that he checked the vehicle prior to trial and "found it was fine, nothing wrong with it."

### "Lemon" Statement

■ The Jewells argue the general manager of Justin Ford & Chrysler admitted the Cirrus was a lemon, thus entitling them to the remedies contained in the Lemon Law. To place their argument in context, we quote directly from the testimony detailing the January 8, 1996, meeting between Mr. Jewell and the general manager:

Q. [Jewells' counsel] What was said?

A. [by Mr. Jewell] That we were unhappy with the car; that we wanted out of it; that we were not willing to accept it. We felt like it was a lemon.

Q. Now this is very important. What did Mr. Todd say when you said that?

A. The best of my recollection is a direct quote saying, I don't disagree with you.

Q. He didn't disagree with you that it was a lemon?

A. That is what he said.

Relying on this testimony, the Jewells claim that Chrysler essentially conceded its case.

The Jewells' argument, however, misinterprets the significance of the claimed admission.

When the term admission is used without any qualifying adjective, the customary meaning is an evidentiary admission, that is, words in oral or written form or conduct of a party or a representative offered in evidence against the party. *Evidentiary* admissions are to be distinguished from *judicial* admissions. Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel

---

**2.** Chrysler argues the Cirrus was subject to only one repair because it was in the shop on only one occasion and the repair attempt was one contin-

uous process. However, we need not address this issue, especially when Chrysler admitted, in discovery, two experiences of nonconformity.

that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case, whereas an evidentiary admission is not conclusive but is subject to contradiction or explanation.

2 *McCormick on Evidence* § 254, at 137–38 (5th ed.1999) (footnote omitted). In this case, the admission by the general manager is simply an evidentiary admission, which is not conclusive of the case but is subject to explanation or contradiction. In fact, Todd's actions on January 8 contradict his statement to Jewell that he did not disagree the Cirrus was a lemon: Todd told Mr. Jewell he would have to take the car because it was repaired. Such a statement is contrary to Chrysler's obligation to replace or accept return of the vehicle if it was indeed a lemon. Wyo. Stat. Ann. § 40–17–101(c). Perhaps more importantly, the district court found the Jewells had not met the requirements contained in the Lemon Law, and we have concluded these findings are not clearly erroneous. Under these circumstances, we cannot agree with the Jewells that they were entitled to the remedies of the Lemon Law as a result of the general manager's statement that he did not disagree that the Cirrus was a lemon.

### Chrysler's Offer of Relief under the Lemon Law

Having determined that the district court did not err in finding that the Jewells were not entitled to relief under the Lemon Law, we need not address the issue of whether Chrysler offered the relief contained in that statute.

### CONCLUSION

While the Jewells' displeasure with the Cirrus is understandable, the district court appropriately found they had not established the car was a lemon. The decision of the district court is affirmed.